Willie Huguet is the owner of a piece of real estate fronting on the public road in Convent, La. Outside his front fence but on his land and near to the highway was a large pecan tree.
Huguet avers that he gave to the Works Progress Administration a right of way *Page 237 
for the construction of a concrete sidewalk along the front of his property, but that though it was understood that the sidewalk would be made to curve around the pecan tree so that it would not be necessary that it be removed, "one, Durald F. Woods, the engineer on said paving project, without consulting your petitioner or securing any authority from him, joined with the Louisiana Power Light Company and participated in the destruction of the pecan tree, * * *". He avers also that "* * * the said Louisiana Power Light Company desired the destruction of this tree as aforesaid for the purpose of placing its power line over this particular spot; * * *". He prays for solidary judgment against Durald Woods and Louisiana Power Light Company for $1,100 fixing the value of the tree at the time of its destruction at $100, and asking $1,000 for the "violation of his legal and property rights" for "trespass" and for "humiliation and annoyance."
The defendants filed exceptions of no right or cause of action, and at the same time Louisiana Power Light Company filed a plea of nonjoinder of parties defendant, contending that the Police Jury of the Parish of St. James was a necessary party since it had secured the right of way and had constructed the sidewalk in connection with the Works Progress Administration.
The exceptions of no right or cause of action were overruled but the plea of nonjoinder was maintained and plaintiff was ordered to make the Police Jury of the Parish of St. James a party defendant.
Alternative writs of certiorari, prohibition and mandamus were granted by the Supreme Court which, after considering the question, remanded the matter for trial on the merits, holding that if there was liability in the defendants and also in the Police Jury, it was solidary, and that therefore the said Police Jury need not be made a party since any one or more of several tort feasors, who are solidarily liable, may be sued without the necessity of joining all. See Huguet v. Louisiana Power Light Co., 196 La. 771, 200 So. 141.
Defendants then filed answers. Woods admitted that he is Parish Engineer of the Parish of St. James and that, at his request, Huguet granted to the Parish a five foot (sidewalk) right of way across the front part of his property, and he averred that the right of way deed referred to the property as being "located approximately at the points previously staked out by the parish surveyor". Woods also admitted that the tree had been removed by the Louisiana Power Light Company at his request, but he denied that there had ever been any understanding with Huguet that the tree would not be removed, and that the sidewalk would be made to curve around it. He admitted that as Parish Engineer, since he had no equipment nor experienced men to remove the tree, he had later endeavored to build the sidewalk around it. And he also admitted that, at his request, the Louisiana Power Light Company, which had "experienced men and equipment suited for the removal of trees" had removed the said tree. He further averred that his additional reason for requesting the Power and Light Company to remove the tree was that he realized that it would be dangerous to permit inexperienced men to work so near to high voltage wires which passed so close to the tree that had it been felled improperly it might have struck these wires.
The Louisiana Power Light Company answered denying all liability but admitting that, in an effort to render a service to the Parish of St. James, its employees had removed the tree at the request of Woods, the Parish Engineer. It denied that it was in any way interested in the removal of the tree and alleged that its local officials knew that Huguet had granted a right of way located in such a way as to make it necessary that the tree be removed.
There was judgment dismissing plaintiff's suit and he has appealed.
The record does not clearly show whether, at the time at which the right of way was granted by Huguet it had been "staked out by the parish surveyor" as is set forth in the deed. But it does appear beyond any doubt that the contemplated sidewalk — if not made to curve around the tree, would have found the tree directly in its way. And the record does not convince us — far from it, in fact — that when the deed was granted by Huguet there was any verbal understanding that the sidewalk would be located so as to go around the tree. In fact, although the deed was granted on May 17th, 1939, Huguet testified that his first conversation with anyone "with reference to curving the sidewalk around *Page 238 
the tree" was held about one week before the actual cutting took place, which was on May 18th, 1940, approximately one year after the deed had been granted. It is then perfectly clear that when the right of way was granted there was no verbal agreement that the tree should be left. In fact, in the printed right of way deed there was left a blank at the top in which appeared the words: "Special Conditions". Nothing was written into this blank, and surely had there been any special understanding it is here that some reference to it would have been made.
The record shows too that long before this occurrence, when the highway was constructed, the roots of the tree had been cut on the highway side and that this had weakened it considerably. It further appears that when Woods, though not obligated to leave the tree, attempted to do so because of the danger of cutting it so near to the high voltage wires, he had a trench dug curving around the tree, and in doing so had cut the roots on the side opposite the highway, and there is much evidence to the effect that as a result the tree had been so weakened as to constitute a menace to the safety of the general public.
The truth about the matter seems to be that Mr. Huguet conceived the idea that the Louisiana Power Light Company had been benefited by the removal of the tree and that that corporation should, therefore, be required to pay him. But the record leaves no doubt at all that that company had no interest in the matter except that those in charge of its operations in that locality were willing to assist the Parish in removing the tree. It appears that the power lines of that company had all been relocated so as to go around the tree and that therefore that company, while it might formerly have been interested in the removal of the tree, no longer had that interest.
That Huguet was willing to have the tree cut and complained only because the actual cutting was performed by the power and light company is shown by several witnesses, but it especially appears from his own testimony, for he seems to have been anxious that the sidewalk be constructed, and, when asked whether he would have consented to the cutting down of the tree in order to obtain the sidewalk, said:
"If they wouldn't have taken the right of way I would have permitted them to cut the tree."
Mr. Himel, the parish carpenter, said:
"Mr. Huguet said that the Parish could cut the tree, and he wouldn't charge the parish, but if the power company cut it, he would want to get paid."
Mr. Huguet is not entitled to compensation for the value of the tree or for trespass, humiliation or annoyance.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.